### T. W. HOUSE v. KOUNTZE BROS. ET AL.

Delivered December 2, 1897.

**Check—Holder—Action Against Bank.**

The holder of an unaccepted bank check can not maintain an action thereon against the bank. Garrett, C. J., dissenting.

APPEAL from Smith. Tried below before Hon. FELIX J. McCORD.

*Frank Andrews,* for appellant.—Bonner & Bonner having on deposit with Kountze Bros. an amount more than sufficient to pay the check in favor of House, and House having paid the check of Bonner & Bonner drawn on Kountze Bros., it operated as an equitable assignment pro tanto of the deposit with Kountze Bros., and Kountze Bros. were bound by a contract, at least implied by the course of dealing between them and Bonner & Bonner, to accept and pay the check to the extent of the funds on hand, and Kountze Bros. are therefore liable to House, and having declined to pay the check are liable to him in judgment. Harris County v. Campbell, 68 Texas, 27; Clark v. Gillespie, 70 Texas, 516; Spann v. Cochran, 63 Texas, 240; Schermerhorn v. Vanderheydens, 3 Am. Dec., 304, and note; Barker v. Bucklin, 43 Am. Dec., and note; Hendricks v. Lindsay, 93 U. S., 143; Munn v. Burch, 25 Ill., 35; Ins. Co. v. Stanford, 28 Ill., 168; Kingman v. Perkins, 105 Mass., 111; Kahnweiler v. Anderson, 78 N. C., 133; Cleveland v. Williams, 1 Texas Civ. App., 443; Bank v. Bank, 68 Ill., 398; Bank v. Bank, 80 Ill., 212; Fogarties v. Bank, 12 Rich. (S. C.), 518; Roberts v. Corbin, 26 Iowa, 315; Vanbibber v. Bank, 12 La. Ann., 481; Lester v. Given, 8 Bush. (Ky.), 357; Pease v. Landauer, 63 Wis., 20; Dodge v. Bank, 20 Ohio St., 246; Chaffe v. Bank, 40 Ohio St., 10; Bailey v. Burgess, 5 Ohio St., 15; 2 Morse on Banks and Banking, 3 ed., sec. 491, et seq., secs. 496-500, 528-538; 1 Dan. on Neg. Inst., sec. 21, et seq.; 2 Dan. on Neg. Inst., secs. 1637-1643; 2 Story's Eq., secs. 1043, 1044.

*Ben B. Cain* and *W. S. Herndon & Son,* for appellees.—This check was in effect an ordinary bill of exchange. It was not drawn on any particular fund, but upon the general account of Bonner & Bonner, which varied from day to day by reason of the fact that it was a banking ac-

count upon which Bonner & Bonner were constantly drawing for New York exchange, and which was kept up by collections and remittances constantly being sent to Kountze Bros. by Bonner & Bonner in the course of business. There being nothing upon the face of the check itself to show an assignment, and no express or implied contract between Bonner & Bonner and House showing it was intended to assign or appropriate any particular fund or debt, the check must be considered as an ordinary bill of exchange, and as such it did not operate as an assignment, and therefore the holder thereof has no cause of action against the drawee. Durrum v. Hendrick, 4 Texas, 499; Bank v. Millard, 10 Wall. (U. S.), 156; Bank v. Whitman, 94 U. S., 343; Lund v. Bank, 49 Barb. (N. Y.), 221; Chapman v. White, 6 N. Y., 417; Attorney-General v. Ins. Co., 71 N. Y., 330; Bank v. Schuler, 120 U. S., 511-514; Risley v. Bank, 83 N. Y., 325; Coates v. Bank, 91 N. Y., 20; Pickle v. Bank, 12 S. W. Rep., 919; Bank v. Bank, 69 Ind., 479.

GARRETT, CHIEF JUSTICE.—On November 12, 1891, Bonner & Bonner, who were bankers doing business as such in the city of Tyler, Texas, drew a check payable to T. W. House, a banker of Houston, Texas, on Kountze Bros., who were bankers doing business as such in the city of New York, for the sum of $5000, as follows:

" BONNER & BONNER, BANKERS.                " No. 14163.
"TYLER, TEXAS, November 12, 1891.
" Pay to the order of T. W. House ......................$5000.00
"Five Thousand ..................................... Dollars.
                           " BONNER & BONNER.
"To Kountze Bros., 120 Broadway, New York, N. Y.     "COTNAM."

Two days afterwards, to wit, November 14, 1891, Bonner & Bonner became insolvent and made a deed of assignment for the benefit of their creditors. The First National Bank of Dallas, Texas, brought a suit against them in the Supreme Court of the city of New York upon an indebtedness in its favor, and sued out a writ of garnishment or attachment against Kountze Bros., which was served on the latter November 16, 1891. Next day, on November 17, 1891, the check drawn in favor of T. W. House was presented to Kountze Bros. for payment, which was refused. At the time of the presentment of the check Kountze Bros. had on deposit in their bank, to the credit of Bonner & Bonner, the sum of $7246.49, which within a few days was increased to $8019.29, by remittances which were then in transit.

Kountze Bros. were the correspondents of Bonner & Bonner in the city of New York for the transaction of their banking business and the payment of such drafts or checks as they might draw on them in favor of their customers, for which purpose the money to the credit of Bonner & Bonner with Kountze Bros. at the time the check was drawn and presented had been deposited. They did business in the usual manner of

bankers, and had no special undertaking or agreement with respect to the payment of the check drawn in favor of T. W. House, and it was drawn and delivered to House in the usual course of business. There was no agreement that the deposit was a special one to meet any particular draft or drafts, nor was there any agreement between House and Bonner & Bonner other than the check and such as may be inferred from it and the usual course of the business of banking, and there were no facts or circumstances which would indicate that there was otherwise any intention to assign or set apart for the use of House any particular sum of money on deposit with Kountze Bros. against whom the check was drawn, other than the mere fact that the check was drawn for a valuable consideration in the usual course of business.

At the time that Bonner & Bonner failed and suspended business, they were indebted to Kountze Bros. on three promissory notes, and among them was a note for $15,000, due November 23, 1891. Two of the notes were immediately paid with the proceeds of collateral securities attached to them, and an excess of the collaterals amounting to $1402.45, after the payment of the two notes, was credited on the $15,000 note. This note was also credited with $3990, the proceeds of one of the collateral notes attached to it. Other collaterals attached to the $15,000 note were a note of John Durst for the sum of $4350, and a note of J. H. Brown & Co. for the sum of $10,000, to which was also attached certain preferred stock of a compress company, amounting to $10,000. Nothing has been collected upon either of these notes. There was evidence to the effect that John Durst was solvent when the note matured, but a suit brought by Kountze Bros. was pending against him for the amount of his note at the time of the trial below. The evidence showed that J. H. Brown & Co. were insolvent, but there was testimony to the effect that the compress stock for $10,000 could have been sold, at the time of the failure of Bonner & Bonner, for $6500, but that Kountze Bros. had mislaid the stock and did not know until some time afterwards that it had been attached to the J. H. Brown & Co. note. The stock, at the time of the trial below, was worth about 25 cents on the dollar, and a suit brought by Kountze Bros. to foreclose their lien upon it was then pending. The amount due the City National Bank of Dallas was $3805.35.

T. W. House brought suit against Bonner & Bonner, as the drawers, and Kountze Bros. on their obligation to accept and pay the check above mentioned, for the recovery of the amount thereof, making the City National Bank also a party defendant in order to adjudicate its rights under the garnishment.

Kountze Bros. answered the petition by a demurrer that no liability was created against them on the unaccepted check sued on by the plaintiff. They further answered by general denial, and a special plea setting up the indebtedness of Bonner & Bonner to them, and claimed a lien on the collateral in their hands as well as the deposit to the credit of Bonner & Bonner for the payment of said indebtedness. They also set up the garnishment proceedings against them by the City National

Bank, and claimed that the fund or deposit was in custodia legis, and that there was not more than enough in their hands to satisfy their own claims and that of the City National Bank. They also pleaded their failure to collect the collaterals to secure the note from Bonner & Bonner.

Upon the trial below, the court trying the case, without a jury, held that there was no assignment of the fund, and that as the check had never been accepted by Kountze Bros., the plaintiff had no cause of action against them, and rendered judgment in favor of Kountze Bros. and the City National Bank, but against Bonner & Bonner in favor of House for the full amount of the indebtedness sued for.

Appellant's contention is, that the drawing of the check operated as an assignment to him pro tanto of the amount of the funds deposited to the credit of Bonner & Bonner with Kountze Bros., and gave him a right of action against Kountze Bros., although the check was never accepted by them.

It is well settled that a bank deposit is a debt owed by the banker to the depositor, and that part of a chose in action may be assigned and suit maintained against the debtor for the part so assigned. Harris County v. Campbell, 68 Texas, 27. But there is a difference of opinion about the right of a holder of a check drawn by a depositor against money deposited by him in the bank, and never accepted by the bank, to maintain a suit thereon against the bank. The weight of authority is that such a suit can not be maintained. This is the rule in England, made so by the Act of Parliament codifying the law upon the subject of bills of exchange and the decisions of the English courts before that time. But the act does not extend to Scotland, where the bill operates as an assignment from the time it is presented to the drawee. 4 Eng. Rul. Cases, 159. The act referred to defines a check to be "a bill of exchange drawn on a banker, payable on demand." It is also the rule adopted by the Supreme Court of the United States and many other courts in this country.

On the other hand, quite a number of the States have adopted the contrary rule, and hold the drawing of a check by a banker, against funds upon deposit, is an assignment pro tanto of the fund in the hands of the banker to the drawee of the check, or at least, if there is no assignment, that the check holder has such a privity of contract with the banker as to authorize him to maintain the action against the bank, upon an implied promise to pay the check of the depositor. For a collation of the authorities pro and con, see 5 Am. and Eng. Encyc. of Law, 2 ed., p. 1061, et seq., and p. 1065 et seq., and notes; also, for a collation and discussion of the authorities, 2 Morse on Banks and Banking, 3 ed., sec. 513, et seq., and sec. 528, et seq. Notes citing the English and American cases upon the question will be found in 3 Eng. Rul. Cases, at pages 757 and 760.

The courts holding that the drawee of an unaccepted check has no right of action against the banker, do so upon the grounds that the contract is with the depositor and the bank owes no duty to the check holder, and therefore can maintain no action for the want of privity of contract; that the check is simply an order that may be countermanded at any

time, and does not operate as an assignment, legal or equitable, of the deposit upon which it is drawn, or create a lien thereon at law or in equity; that the contract of the bank with the depositor is entire, and the drawer of the check may not split up his cause of action against it; and that to allow the checkholder to sue would be to give the right of action to two persons for the same thing. These courts, however, have recognized the principle that there may be an assignment of the fund in the bank to the drawee of the check, growing out of the intention of the parties and the circumstances of the case. There are quite a number of cases in the Supreme Court of the United States, and other courts, illustrating this principle, and they are easily distinguished from and in nowise conflict with the cases holding to the general doctrine that no action can be maintained.

The leading case relied upon in support of the rule that the checkholder can not maintain an action against the bank, is Bank of the Republic v. Millard, 10 Wallace, 152. In that case a paymaster of the army drew a check on the bank in favor of Captain Millard, in payment of a balance due him by the government. The check fell into the hands of another person, and the bank paid it on a forged indorsement. Millard recovered the check, and sued the bank. The court held that, in the absence of proof that the check had been accepted by the bank or charged against the drawer in settlement with the bank, Millard could not maintain a suit against the bank, and this rule has been adhered to in all the subsequent decisions of that court whenever the question has been raised; but, as above stated, there are cases in which the court has held that there was an assignment of the fund to the deposit of the drawer in the bank in favor of the drawee of the check, arising out of the particular transaction.

A case illustrating this principle is that of Bank v. Yardley, 165 U. S., 634, from which it appears that the president of the Keystone National Bank of Philadelphia solicited the Fourth Street Bank to give his bank $25,000 in gold certificates to meet its balance at the clearing house. He represented that his bank had about that sum on deposit with the Tradesmens National Bank of New York, and exhibited a memorandum showing that to be the case, and offered his check for the amount. The check was taken and the gold certificates delivered. On the next morning, before the check was presented to the New York bank, the Keystone National Bank was closed by order of the United States Comptroller of the Currency. The suit was a bill in equity to subject the money which had been paid to the receiver to the payment of the check, and it was held that the rule that the checkholder can not sue the bank upon which his check is drawn was recognized, but that the transaction showed an assignment of the particular fund on deposit with the New York bank to the credit of the drawer; so there is no conflict of decision in the Supreme Court of the United States upon this question.

The same principle is recognized by the other courts, which hold that the checkholder has no right to sue the bank upon an unaccepted draft.

There are two leading cases in support of the contrary doctrine, which allows the checkholder to sue, decided about the same time. They are Fogarties v. State Bank, 12 Rich. Law (S. C.), 518, and Munn v. Burch, 25 Ill., 35.

The Supreme Court of South Carolina, in Fogarties v. Bank, in the well considered opinion delivered by Judge Johnson, in sustaining the right of a checkholder to sue, bases it upon the implied contract between the holder of the check and the bank. In Munn v. Burch, the Supreme Court of Illinois holds that there is not only an implied contract to pay, but an equitable assignment pro tanto of the fund on deposit in the bank as the check amounts to in favor of the drawee of the check.

The authorities are quite numerous on both sides of the question, and reasons are given by judges delivering the opinions of the courts in support of their views which are cogent to sustain the position taken. The text writers, in discussing the question, uniformly favor the rule giving the checkholder the right to sue. Tiedeman, who is more conservative than Morse, says: "The cases which deny the right of the checkholder to sue the bank are by far more numerous than those which recognize his right. And although it is not difficult to demonstrate that the ruling of the minority of the courts is more rational and more consistent with the general principles of the law, in order to secure the much desired uniformity of rules throughout the United States, in respect to commercial law, it may be best for the minority to yield to the majority, on the ground that 'communis error facit jus.'" Tied. on Com. Paper, sec. 452.

In this State the question may be said to be res integra, since our Supreme Court has never passed on it. It came before the Court of Civil Appeals for the Fourth District, and that Court in an opinion by Chief Justice James sustained the right to sue. Doty v. Caldwell, 38 S. W. Rep., 1025. The old Court of Appeals held also to the same effect. Bank v. Randall, White & W., sec. 975.

Counsel for the appellees Kountze Bros. contend that the law of New York should control the question as presented in this case, because the check was drawn upon a bank in New York, to be paid out of a deposit there. It may be conceded that the position is correct. Abt v. Bank, 42 N. E. Rep., 856. Yet there was no proof of what the law of New York is. But as this is a question of the law merchant, the court might perhaps take judicial notice of the law merchant as prevailing in the State of New York, in absence of proof to the contrary. Whart. on Ev., sec. 298. The court, however, must inform itself as to the state of the law, and in doing so finds that there is a hopeless conflict in the decisions, and in the absence of proof of any statute of New York upon the question, must at last decide it upon general principles. The decision of the New York courts can not be more than persuasive, because they can not be noticed judicially as furnishing evidence of what the law of New York really is.

After a careful examination of the authorities, and a full consideration of the reasons in favor of and against the right to sue, a majority of the court are of the opinion that the weight of reason, as well as of authority,

is in support of the rule that the suit can not be maintained. The writer has reached the opposite conclusion, and is of the opinion that, while the weight of authority is against the rule authorizing the suit, yet, as stated by the text writers, the weight of reason is with those courts which hold that the checkholder has the right to sue the bank, although his check has never been accepted.

In view of the conclusion reached by a majority of the court, it becomes unnecessary to pass upon the right of Kountze Bros. to set off the deposit against the note of Bonner & Bonner, or to determine the effect of the garnishment.

The judgment of the court below will be affirmed.

*Affirmed.*

Writ of error refused.