L. C. McBride, Receiver, v. American Railway & Lighting Company et al.

Decided April 2, 1910.

**1.—Bill of Exchange—Equitable Assignment.**

An unaccepted draft or check drawn upon no particular fund is not an equitable assignment of any fund the drawer may have in the hands of the drawee.

**2.—Banks and Banking—Receipt of Draft—Rights of Depositor.**

A draft was presented to a bank for deposit and the amount of the same was entered in the pass book of the depositor, but because the bank was in a failing condition the transaction was not entered on the books of the bank; the bank did fail that day and the draft was returned to the depositor. Held, the rights of the depositor against the drawee in the draft were the same as if the draft had never been presented to the bank.

**3.—Same—General Deposit—Legal Effect.**

When money or its equivalent is deposited in a bank without any special agreement the law implies that it is to be mingled with the other funds of the bank, the relation of debtor and creditor is created between the bank and the depositor, and the deposit is general, and the bank becomes the owner of the fund.

**4.—Same—Special Deposit.**

When money or its equivalent is deposited in a bank with an accompanying agreement that the identical thing deposited shall be returned or that the same shall be paid out for a specific purpose, the transaction is a special deposit and the relation of bailor and bailee is created. In such case the bank acquires no title thereto and is a mere trustee for the safekeeping, return or disbursement of the fund, according to the special contract by which the deposit is made.

**5.—Same—Case Stated.**

A fund was deposited in one bank to the credit of a second bank upon an agreement between the depositor and both banks that the fund was to be drawn against by the second bank only for the payment of a certain class of claims. Held, the deposit was a special deposit and the transaction was not an ordinary commercial transaction; the fund did not belong to the second bank and could not be recovered by it or its receiver.

**6.—Same—Equitable Assignment.**

When it is established that it was the intention and agreement of the parties to a transaction that a check drawn generally should be paid out of a particular fund, such check as between the parties will be treated as an order for payment out of that fund, and is pro tanto an assignment of the fund.

Appeal from the 44th Judicial District, Dallas County. Tried below before Hon. E. B. Muse.

*Cockrell, Gray & Thomas,* for appellant.—A general deposit in a

bank which becomes insolvent constitutes a fund for the benefit of all creditors, and the rights of such general creditors can not be defeated by showing a secret or collateral agreement that such general deposit was in fact intended as a trust fund or special deposit. Harris County v. Campbell, 68 Texas, 27; Wright v. Ellison, 68 U. S., 1 Wall., 16.

A general check or draft drawn on a bank deposit is not an assignment of the deposit, and in order to constitute a legal or equitable assignment the check or draft must be drawn upon the deposit as on a specific fund or deposit. Adoue v. Blum, 6 Texas Civ. App., 286.

*M. B. Templeton,* for appellees.—A special deposit made in a bank for a specific and well understood purpose is and becomes a specific fund for the purposes intended, and does not become assets of the bank for general distribution among creditors, whether the bank becomes insolvent or not. New York L. Ins. Co. v. Patterson & Wallace, 35 Texas Civ. App., 447; Campbell v. Grant, 36 Texas Civ. App., 641; Johnson v. Amarillo Imp. Co., 88 Texas, 505; Neely v. Grayson County Natl. Bank, 25 Texas Civ. App., 513; Harris County v. Campbell, 68 Texas, 27; Sunderlin v. Mecosta County Sav. Bank, 74 N. W., 478; Fourth Street Bank v. Yardley, 165 U. S., 644.

*W. H. Flippen & T. B. McCormick,* for appellee, George W. Signor Tie Co., Ltd.—While an equitable assignment or lien will not arise against a deposit account solely by reason of a check drawn against the same, if in the transaction connected with the delivery of the ·check it was the understanding and agreement of the parties that an advance about to be made should be a charge on and be satisfied out of a specific fund, a court of equity will lend its aid to carry such agreement into effect as against the drawer, and as against volunteers, or parties charged with notice. Harris County v. Campbell, 68 Texas, 27; Johnson v. Amarillo Imp. Co., 88 Texas, 505; Neely v. Grayson County Natl. Bank, 25 Texas Civ. App., 513; New York L. Ins. Co. v. Patterson, 35 Texas Civ. App., 447; Campbell v. Grant, 36 Texas Civ. App., 641; Fourth Street Bank v. Yardley, 165 U. S., 644, and cases there cited.

CLARK, Special Associate Justice.—The Texas Traction Company was organized and incorporated for the purpose of constructing, owning and operating the line of interurban railway now extending from Sherman to Dallas. To secure the necessary funds to construct and equip the proposed railway it was necessary to issue bonds secured by first mortgage thereon and to negotiate these together with a part of its capital stock. Before the company was organized certain capitalists in Boston, Massachusetts, had proposed to purchase these securities, and, as the work of construction progressed, to advance in installments, based upon certain conditions, the money to pay for the labor performed and material used in the construction work. The American Railway & Lighting Company, a corporation, entered into a contract with the said traction company to construct

and equip the proposed railway, according to plans and specifications, in consideration of the sale and transfer to it of the bonds and stock referred to, and arranged with the Boston capitalists to take over these securities and advance the money as it had proposed. The last named corporation sublet the contract of constructing the road to the Fred A. Jones Company, another corporation. Under this contract, to secure the last named company a lien was given upon the securities aforesaid, and it was subrogated to all rights of the general contractor therein. The funds to arise from the sale of said securities to the Boston capitalists were to be for the sole purpose of constructing and equipping the railway and there were no other funds for that purpose. In order to carry on the work of construction it was necessary that the subcontractor and those furnishing material and labor should be paid as the work progressed; and, in order to be able to do this, it was arranged that, at stated periods, estimates should be made of the work done and material furnished up to that time by engineers selected by the parties interested. When these estimates were made and certified, money with which to pay for the work and material entering into such estimates would be advanced by the Boston capitalists . in part payment for the securities mentioned.

The Old Colony Trust Company is a Boston banking corporation. It seems to have been the banking house of these capitalists and was made the trustee in the deed of trust to secure the bonds. The Western Bank & Trust Company was a Texas corporation engaged in the banking business in Dallas, Texas. For a time, whenever informed of the amount of an estimate so made by the engineers, the Boston capitalists would, by direction of the parties, cause the money to pay the amount of any such estimate to be deposited in a New York bank to the credit of the Western Bank & Trust Company, and, when this was done, this Bank & Trust Company would pay the material and labor claims included in such estimate at its banking house in Dallas. On account of the delay necessarily incident to making payments in this way, it was arranged,' by consent of all the interested parties, that whenever an estimate was made the American Railway & Lighting Company would issue its draft on the Western Bank & Trust Company in favor of each party having a claim for material or labor entering into such estimate, for the amount of such claim, and take a receipt showing payment thereof. Upon this being done, the amount of the estimate would be wired to the Boston capitalists and they would cause the amount of money necessary to pay such estimate to be placed on deposit with the Old Colony Trust Company in Boston to the credit of the Western Bank & Trust Company at Dallas, and the first named company would immediately wire the latter company of the fact. When any such material or labor draft was presented to it, the Western Bank & Trust Company would issue exchange on the Old Colony Trust Company for the amount thereof and present the same to the holder of such draft in payment. This amount would be carried on the books of the Western Bank & Trust Company as an overdraft until the exchange issued by it could be sent to Boston by mail where it would 'be paid

by the Old Colony Trust Company, and until notified of this fact by the company last named.

In some instances the Western Bank & Trust Company would advance the money on such a draft drawn upon it and carry the item as a charge against the Old Colony Trust Company until by due course of business proper credit could be allowed at Boston out of said funds. The Old Colony Trust Company and the Western Bank & Trust Company never at any time had any business transaction between themselves except the transactions here mentioned. Neither had authority to draw draft on the other for any purpose and neither had any fund on deposit with the other except in relation to the matters under discussion. The Western Bank & Trust Company did not select the Old Colony Trust Company as the custodian of these construction funds and really had no voice in its selection for that purpose. It was understood by all of the parties that the deposits placed in the Old Colony Trust Company to the credit of said Bank & Trust Company were for the sole purpose of paying for the construction of said railway, and it was expressly agreed between the said Bank & Trust Company and the American Railway & Lighting Company that "said funds when deposited in the Old Colony Trust Company at Boston should be used only to pay items of construction in connection with the Interurban Railway, except that should the Western Bank & Trust Company pay for any such item in Dallas then it would be entitled to reimburse itself for a like amount out of said funds and also exchange charges."

Arrangement to make payments in the manner stated was made merely for convenience, as exchange drawn by the Western Bank & Trust Company on the Old Colony Trust Company was practically the same as money in Dallas. There were no other means or resources to pay for the construction work except the money arising from the sale of the stock and bonds above mentioned, and the arrangement outlined above was made in order that this money or its equivalent could be made available in Dallas on short notice to be applied solely to construction claims. These facts and all the details of these arrangements were known and assented to by all of the interested parties, including the Old Colony Trust Company. Drafts issued by the American Railway & Lighting Company on the Western Bank & Trust Company for these construction claims were in the ordinary form of a bill of exchange with a combination voucher and receipt on the reverse side thereof—the voucher, audited and approved for payment, showing in detail the items entering into the amount of the draft and stating that it was "incurred in connection with the construction of the Sherman-Dallas Interurban Railway by the Texas Traction Company" and the receipt stating that it was given "in full settlement of the above account" and must be signed before presenting for payment. The exchange issued by the Western Bank & Trust Company on the Old Colony Trust Company in payment of these drafts was in the form of an ordinary commercial bill of exchange. On its face neither the purpose for which or the funds against which it was drawn in any way appeared.

Estimates in the usual way were made by the engineers on the

eleventh and thirteenth days of January, 1908, covering the construction claims in controversy, aggregating $26,108.44, made up of the various items for work done and material furnished by various parties to this suit. Drafts, in the usual form, were issued by the American Railway & Lighting Company on the Western Bank & Trust Company, for each of these items, in favor of the party to whom it was due. Many of these drafts were presented to the Western Bank & Trust Company prior to January 15, 1908, and exchange on Boston was issued in the usual manner in payment for the same; some were presented and paid in cash, while others were never presented to said bank. One of these drafts was in favor of the Fred A. Jones Company, the subcontractor, and amounted to $2584.96. This draft was not presented to the Western Bank & Trust Company with request for the usual Boston exchange, but was presented for the purpose of having the amount of same entered as a deposit in favor of said Fred A. Jones Company with said Bank & Trust Company. When this draft was presented at the window of the Western Bank & Trust Company for deposit the same was received by the teller but no money was paid thereon, and it was not passed to the credit of the Fred A. Jones Company. The amount of the same, however, was duly entered on the pass book of the latter company by said teller and said draft was placed to one side by him along with other deposits received that day. The officials of this bank had determined on the morning of the 15th of January, in view of general financial conditions, to hold the business of the day in abeyance and should not the expected relief to the bank be realized, that then the business of that day, January 15, including checks deposited would be returned to the respective parties entitled thereto. The bank having suspended on the night of January 15, 1908, accordingly, this check, with all other checks and moneys received on that day, was returned; and the Fred A. Jones Company, on the morning of the 16th, immediately tendered said check back to the American Railway & Lighting Company claiming that it had not been paid and claiming payment still from the said company. This company has not yet paid the Fred A. Jones Company said item, claiming that payment should be made out of the fund in the Old Colony Trust Company at Boston.

On the night of January 15, 1908, the Western Bank & Trust Company made a deed of general assignment under the statutes of this State and placed its affairs in the hands of an assignee. Appellant, L. C. McBride, was appointed receiver of said Bank & Trust Company on the 21st day of January, 1908, duly qualified as such and is still serving in that capacity. On that day there was on the books of the Old Colony Trust Company in Boston to the credit of the Western Bank & Trust Company the sum of $26,405.28. Of this amount the sum of $26,108.44 was placed there by the Boston capitalists by order of the American Railway & Lighting Company to pay the items entering into the estimates above stated, and the remaining $296.84 was due the Western Bank & Trust Company for amount of drafts paid by it under former estimates and was the only amount

with the Old Colony Trust Company included in said deed of assignment.

The day before this bank failed it issued three drafts on the Old Colony Trust Company for matters in no way connected with the construction of the railway in question. One of these was in favor of the Guaranty Trust Company of New York for $500, one in favor of the Phoenix National Bank for $1000 and one in favor of the Traders National Bank of Kansas City for $2500. Each of these drafts was immediately mailed to the party in whose favor it was drawn, but neither of them had reached its destination when the Western Bank & Trust Company failed. The Old Colony Trust Company before the failure was not notified of the issuance of either of them and neither it nor any of the other parties to this suit knew of or consented to the issuance of these drafts. These and each of the other drafts in question in this suit were presented to the Old Colony Trust Company after the failure of the Dallas Bank, but payment was refused in each instance. The appellant, receiver, claiming that the $26,405.28 on deposit in the name of the failed bank with the Old Colony Trust Company, was a general deposit, demanded payment of the entire amount of the same, and was likewise refused. Thereupon October 28, 1908, he brought this suit in the District Court of Dallas County against the Old Colony Trust Company, the American Railway & Lighting Company and the several holders of each of the drafts above mentioned except the Fred A. Jones Company, claiming that said sum was a general deposit and that he, as receiver, was entitled to the same as a general asset of the Western Bank & Trust Company. The Fred A. Jones Company intervened, claiming ownership in said fund to the extent of the draft held by it above mentioned. The Old Colony Trust Company brought the money and placed it in the registry of the court and filed an answer disclaiming any interest therein. Each of the defendants holding drafts filed an answer asserting ownership of the amount of the same, and the American Railway & Lighting Company answered, claiming that said fund was a specific fund for payment of construction claims and that each draft issued by it on the Western Bank & Trust Company on account of such claims was an equitable assignment of said fund to the extent of the amount thereof. The pleadings of each party are admitted to be sufficient to authorize the granting of any relief to which such party may be entitled under any view of the law and the facts.

The case was submitted to the trial court on an agreed statement of the facts October 23, 1909, and on the 16th day of the following month said court entered judgment holding that the several drafts for construction claims operated as equitable assignments, and ordered that each of these drafts be paid out of the funds in the registry of the court, and that the remainder thereof be paid to the appellant receiver. Recovery was denied those holding the three drafts issued for other than construction claims. The receiver alone appeals.

Under these facts the principal question before this court is whether or not the trial court erred in ordering that the drafts issued on account of construction claim be first paid out of the fund in

controversy. Before proceeding to discuss this question we shall dispose of the other questions in the case.

The drafts issued in favor of the Guaranty Trust Company, the Phoenix National Bank and the Traders National Bank were for purposes in no way connected with the construction of the Interurban Railway. These were ordinary drafts drawn upon no particular fund. They were issued on the Old Colony Trust Company without its authority or consent and were never accepted by it. While the courts of the country are divided on the point, the weight of authority is in favor of the proposition that an unaccepted draft or check drawn upon no particular fund is not an equitable assignment of any fund the drawer may have in the hands of the drawee. Bank of the Republic v. Millard, 77 U. S., 152; 2 Morse on Banks and Banking, secs. 513 to 538; 5 Am. & Eng. Ency. Law (2d ed.), pages 1061 to 1066. Our courts have decided the point both ways. The old Court of Appeals decided that such a check or draft operates as an equitable assignment. Bank v. Randall, 1 App. Civ. Cases, sec. 975. This was followed by the Court of Civil Appeals of the Fourth District in Doty v. Caldwell, 38 S. W., 1025. A contrary holding was made by the Court of Civil Appeals of the First District in the case of House v. Kountze, 17 Texas Civ. App., 402 (43 S. W., 561), and this case received the approval of our Supreme Court. Therefore the question is no longer an open one in this State. It follows that the trial court correctly held that the holders of these drafts were not entitled to any of the fund in controversy, regardless of whether or not the other questions were correctly decided.

Did the Fred A. Jones Company forfeit any rights under its draft for $2584.96 by the manner in which it handled the same? The facts show that this draft was presented to the Western Bank & Trust Company for deposit and the amount of the same was actually entered on the pass book of the Fred A. Jones Company. The bank, however, was in a failing condition and was expecting to make an assignment at the close of business that day unless relief should come in the meantime. This condition was not known to the Fred A. Jones Company and the bank did fail that very night. If these were all the facts, it is clear that the latter company was entitled to recover possession of the draft. 5 Cyc., 564. But the facts show that this draft was never really accepted as a deposit. The transaction was never entered on the bank books and the draft was returned the following day. Therefore the rights of the Fred A. Jones Company under this draft are precisely the same as if it had never been presented to the bank, and if the holders of other drafts issued on account of construction work are entitled to recover, the Fred A. Jones Company is likewise so entitled.

We have now reached the question of whether or not the drafts issued for construction work should be paid out of the fund in controversy. To properly decide this question it is necessary to determine (1) whether or not the fund in question was a special deposit— a trust fund; and (2) whether or not the drafts for construction work operated as equitable assignments.

When money or its equivalent is deposited in a bank without any

special agreement the law implies that it is to be mingled with the other funds of the bank, the relation of debtor and creditor is created between the bank and the depositor, and the deposit is general. In such a transaction the bank becomes the owner of the fund.

When, on the other hand, money or its equivalent is so deposited with an accompanying agreement that the identical thing deposited shall be returned or that the same shall be paid out for a specific purpose, the relation thus created is not that of debtor and creditor. Such a transaction is a special deposit and the bank is liable only as bailee. In such a case the fund is a trust fund, the bank acquires no title thereto and is a mere trustee for the safe-keeping, return or disbursement of the fund according to the special contract by which the deposit is made. I Morse on Banks and Banking, secs. 183-188; 5 Cyc., 513-515; Anderson v. Pacific Bank, 112 Cal., 598; Peak v. Ellicott, 30 Kans., 156; Mutual Acc. Assn. v. Jacobs, 141 Ill., 261; City of Sherman Bank v. Weiss, 67 Texas, 331; Continental Natl. Bank v. Weems, 69 Texas, 489.

In our opinion the deposit in question was not a general but a special deposit. It was created alone for the payment of construction claims. It arose by mortgage on the property this very work was bringing into existence. It was arranged beforehand that it should be created in this way. Funds so created were the only means the railway company had to construct the road and the only way by which the work of construction could be paid for. It was advanced only in installments as the work of construction progressed, and then only as values were added to the mortgaged property equal to or greater than the amount advanced. Its disbursement was hedged about by conditions and safeguarded by restrictions insuring it against being misapplied. It was never in the actual custody of the Western Bank & Trust Company and was deposited in its name merely for convenience in carrying out the very purpose for which it was created—the payment of these construction claims. This bank had agreed that it should be used for no other purpose. The Western Bank & Trust Company did not select the Old Colony Trust Company as the custodian of this fund. These two banks were entire strangers. No business was ever transacted between them except the matters under discussion here. This transaction, therefore, was not an ordinary commercial transaction. Now, if this money had been placed in a separate package directly in the vault of the Western Bank & Trust Company with a specific agreement that it should be used only to pay construction claims, all authorities agree that such a transaction would be a special deposit and that the bank would have acquired no title whatever to the fund. How, then, can it be said that this bank acquired any greater right when, with precisely this agreement, the money was not actually placed in its custody at all? It is contended, however, that as between these banking houses there was no agreement restricting the rights of the Western Bank & Trust Company with reference to this fund. The answer is that it did not belong to either of these institutions; and, if we concede the contention, we are unable to see how that could alter the case. But in our opinion the record does not sustain the conten-

tion. The facts, we think, sustain the proposition that both banks were fully advised ·of the nature and purpose of the deposit and at least tacitly assented to the same.

Had the Western Bank & Trust Company brought suit even to obtain the mere possession of the fund the admitted facts would have been fatal to its recovery in such a case. Aside from its relation as trustee and the right to be reimbursed for the amount of any construction claim actually paid by it, this bank had no right or title to the fund in question and its receiver has no greater right than it had. Keller v. Smalley, 63 Texas, 512; Scott v. Armstrong, 146 U. S., 499; Fourth Street Bank v. Yardley, 165 U. S., 644.

The bank having failed, its power as trustee was destroyed and the only right left to it was to be reimbursed for the amount of the construction claims it had actually paid. This was allowed the receiver by the trial court, and in our opinion that court did not err in denying his right to recover anything else. And this is true regardless of whether or not the drafts in question constituted assignments of the balance of the fund. The receiver, having no title to the fund, can not complain of the judgment awarding it to others and no one else complains.

But we think the drafts in question were, in equity, assignments *pro tanto* of the fund in controversy. The fund was a special fund created to pay the very claims for which the drafts were given. Each draft showed the very purpose for which it was issued and all parties understood that it was to be paid out of this fund. While the mere giving of a check or draft drawn generally on a bank or person having funds of the party drawing the same, will not operate as an assignment of any part of such fund, yet, as said by Justice White in a leading case, "the authorities are clear that when it is established that it was the intention and agreement of the parties to a transaction that a check drawn generally should be paid out of a particular fund, such check, as between the parties, will be treated as though an order for payment out of a specific designated amount." Fourth Street Bank v. Yardley, 165 U. S., 633. This proposition is sustained by the decisions of our own State. New York L.. Ins. Co. v. Patterson, 35 Texas Civ. App., 447 (80 S. W., 1058); Johnson v. Amarillo Improvement Co., 88 Texas, 510; Harris County v.· Campbell, 68 Texas, 28; Neely v. Bank, 25 Texas Civ. App., 513 (61 S. W., 559); Campbell v. Grant, 36 Texas Civ. App., 641 (82 S. W., 794).

It follows that, in our opinion, the trial court correctly disposed of the fund in question, and the judgment is, therefore, affirmed.

*Affirmed.*