WINFIELD STATE BANK v. FIRST NAT. BANK OF WINFIELD. (No. 1671.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 24, 1916. Rehearing Denied Dec. 7, 1916.)

GARNISHMENT ☞56—DEPOSITS IN BANK.

Defendant, a mule buyer, having only a small balance in bank, arranged to buy mules for his principal, giving his own checks in payment. Such checks were to be taken up by his principal, and the latter drew a check in defendant's favor sufficient to cover all checks drawn by him. Such check was deposited, but before all of the checks drawn by defendant had been paid his account was garnisheed, whereupon the bank demanded and received a note, signed by the buyer and his father, before honoring defendant's checks. *Held*, that the proceeds of the principal's check deposited to the account of defendant were subject to garnishment; the bank not having paid defendants' checks out of such proceeds, but out of proceeds of the loan made to him, and the transaction creating the relation of creditor and debtor between defendant and his principal.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 110, 111; Dec. Dig. ☞56.]

Appeal from District Court, Titus County; J. A. Ward, Judge.

Action by the Winfield State Bank against J. R. Fuquay, in which the First National Bank of Winfield was summoned as garnishee. From a judgment principally in favor of the garnishee, plaintiff appeals. Reformed.

Having a judgment against J. R. Fuquay, on which there was a balance of $990.52 unpaid, appellant, on November 19, 1915, sued out a writ of garnishment against appellee. The latter answered that it was not indebted to Fuquay, and did not have in its possession effects belonging to him. The answer having been controverted by appellant, facts as follows were shown by testimony heard at the trial: One Cook had employed Fuquay to buy mules on his (Cook's) account, and had agreed to pay Fuquay $5 for each mule he purchased. Fuquay bought a number of mules, paying for same with checks drawn by him on appellee, with whom he had a checking account. At the times the mules were purchased Cook and Fuquay were together, it seems, and the animals were paid for with checks drawn by the latter, instead of by the former, because the latter was known to the sellers, and the former was not, and checks drawn by him, therefore, would not have been as readily accepted by them in payment for the mules. The balance ($1.88) in Fuquay's favor on his account

with appellee at the time he drew the checks was not sufficient to cover same, but it was understood between Fuquay and Cook that the latter would give the former a check drawn by the latter on a Ft. Worth bank in favor of the former for a sum equal to the amount of the checks given by him in payment for the mules, and that Fuquay would have the check to be given to him by Cook cashed and the proceeds credited on his (Fuquay's) account with appellee, and in that way provide a fund with which to pay the checks he had given to persons of whom he had purchased mules. In conformity to this understanding Cook, on November 16, 1915, gave Fuquay a check for $1,615, and the latter had appellee to cash it and credit his account with the proceeds. Fuquay, at the time he had appellee to cash the check, advised it that he had drawn checks against it for the amount thereof. At the time the writ was served on appellee, checks drawn by Fuquay to pay for mules, amounting to $665, had not been presented to appellee by the holders thereof, and therefore had not been paid. Hence there was, then a balance amounting to $665 of the proceeds of the Cook check to Fuquay's credit with appellee, which, with $1.88 he had with it when it cashed the check, made a total of $666.88 then to Fuquay's credit with appellee. After the writ was served on it, appellee had Fuquay and his father to make a note in its favor for $665, the amount of the checks drawn by Fuquay and unpaid when the writ was served. Thereupon appellee gave Fuquay credit on its books, but not upon the account it then had with him, for the amount of the note, and as it paid said checks charged same against the credit in Fuquay's favor so created. With reference to this note, appellee's cashier, Barrett, testified that the balance with it to Fuquay's credit when the writ was served on it was $666.88, and that "since we have been garnished herein J. R. Fuquay has not used any of said money." He further testified:

"Before I would pay those checks I had Fuquay and his father to make a note, which I used in the same sense as a replevy bond. It was to protect the bank's interest in the matter. I don't remember the date of that note. I don't think it was dated prior to the time I paid those checks. I am not sure about that. I could not give the date of the note; I don't remember. I should think the note was dated prior to the payment of the checks. A. J. and J. R. Fuquay signed that note. A. J. Fuquay is the father of J. R. Fuquay. I am not sure which is the principal. The note was made to cover the amount of those checks. I think it is a demand note. * * * He made a note for $665 and his father went on it—a regular banking note—and placed it in the bank as an asset, and it now goes in as a loan and discount as offset to the deposit. We count it as an asset; it is included in the loans and discounts, like other notes. I gave him credit for it, but did not discount it. I gave him credit for the face of the note. Immediately after that I paid those checks. * * * At the time of the garnish-

ment J. R. Fuquay came in the bank and found he had this many checks unpaid. Instead of making a regular replevy bond, he and his father made a note, which created a credit or balance which took care of those outstanding checks. * * * I am of the opinion there is an A. J. Fuquay account, and the note and these checks may be charged to his account. I am not sure about that."

J. R. Fuquay testified that he made the note "to keep the checks from being turned down that were out when the account was garnished. The note was put up as collateral to secure the bank."

Cook intervened in the suit claiming the proceeds still with appellee of the check given by him to J. R. Fuquay to be his property, on the theory that he had advanced same to said Fuquay to use in paying for the mules. But, testifying as a witness, he said: "I have no money that I know of in the First National Bank of Winfield now."

The trial was before the court without a jury. He was of the opinion that only $1.88 of the $666.88 held by appellee on J. R. Fuquay's account was subject to the writ, and rendered judgment accordingly, and in favor of appellee for $15 as an attorney's fee for preparing its answer to the writ. The judgment was, further, that Cook take nothing by his intervention. The appeal was prosecuted by appellant.

J. M. Burford, of Mt. Pleasant, for appellant. T. C. Hutchings, of Mt. Pleasant, for appellee.

WILLSON, C. J. (after stating the facts as above). We are of opinion it appeared as a matter of law that appellee was indebted to Fuquay in the sum of $666.88, and that the trial court erred when, instead of rendering judgment in appellant's favor for that amount, he rendered judgment in its favor for the sum of only $1.88. It is not necessary to inquire whether under the circumstances of the case appellant might, after the service of the writ on it, lawfully have paid the checks Fuquay had drawn on it out of the proceeds of the Cook check, then to his credit with it, or not (House v. Kountze, 17 Tex. Civ. App. 402, 43 S. W. 561; Neely v. Bank, 25 Tex. Civ. App. 513, 61 S. W. 559; Bank v. Moline Plow Co., 168 S. W. 420; Bank v. Davis, 149 S. W. 290; McBride v. American Ry. & Lighting Co., 60 Tex. Civ. App. 226, 127 S. W. 229; Elliott v. Bank, 135 S. W. 159); for, as is shown by testimony referred to in the statement above, it conclusively appeared it did not pay same out of those proceeds, but, instead, paid them with money it loaned to Fuquay on the note made by him and his father to it. Appellee's contention that $665 of the $666.88 to Fuquay's credit with it at the time the writ was served belonged to Cook, and not to Fuquay, is believed to be unsound. When Fuquay, at Cook's request, gave his own checks in payment for the mules, he became liable to the

respective holders thereof, and Cook became liable to him for the amounts thereof. When Cook gave Fuquay the check on Ft. Worth for $1,615, he paid a debt he owed to Fuquay, and the proceeds of the check belonged to him, and not to Cook.

Appellee's counterassignment, attacking the sufficiency of the writ of garnishment to require it to answer, is believed to be without merit, and therefore is overruled.

The judgment will be so reformed as to adjudge a recovery by appellant against appellee of $666.88, instead of $1.88, and, as so reformed, will be affirmed.

