IRAs 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-183-CV





KENNETH D. LEE AND NORMA B. LEE,



 APPELLANTS


vs.





JORGE A. GUTIERREZ, LIQUIDATING AGENT FOR RIO GRANDE


SAVINGS AND LOAN ASSOCIATION, AND RIO GRANDE


SAVINGS AND LOAN ASSOCIATION,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT



NO. 454,354, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 





 This case is a product of the savings and loan crisis of the late 1980s. Appellants
Kenneth D. Lee and Norma B. Lee are representatives of the class of Individual Retirement
Account ("IRA") depositors at the failed Rio Grande Savings and Loan Association. The IRA
depositors brought a class-action suit against Rio Grande and Jorge A. Gutierrez, the state-appointed liquidating agent (collectively "Rio Grande"), contending that as IRA depositors, they
were entitled to priority over other Rio Grande depositors in the institution's liquidation and
should receive 100% reimbursement for the funds in their IRA accounts. The district court
rendered final judgment in favor of Rio Grande, determining that the IRA depositors had the same
priority in the distribution of liquidation proceeds as Rio Grande's other depositors. We will
affirm.


BACKGROUND


 The facts of this case are not in dispute. Rio Grande was a state-chartered savings
and loan association located in Harlingen, Texas. In April 1988, the Texas Savings and Loan
Department declared Rio Grande insolvent and appointed Jorge Gutierrez as its liquidating agent. 
See Savings and Loan Act, Tex. Rev. Civ. Stat. Ann. art. 852a, § 8.09(b) (West Supp. 1993). 
The Savings and Loan Act requires that the liquidating agent liquidate the remaining assets of an
insolvent savings and loan and distribute the proceeds to the institution's depositors and other
creditors according to the priority set forth in the act. Tex. Rev. Civ. Stat. Ann. art. 852a, §
8.09(c), (g) (West Supp. 1993). Mr. Gutierrez determined that Rio Grande had insufficient assets
to repay 100% of its deposit accounts. Rio Grande was at the time the only savings and loan in
Texas whose accounts were not insured by the Federal Savings and Loan Insurance Corporation.

 During the liquidation, a dispute arose between Gutierrez and some of Rio Grande's
IRA depositors. Gutierrez had approved the IRA depositors' claims but had assigned them the
same priority in the liquidation as other depositors. The IRA depositors contended that their
claims were entitled to special priority because their IRAs were held as trust accounts, and thus
constituted "special deposits." Of Rio Grande's 6,300 depositors, approximately 617 were IRA
accounts, representing $3.9 million of Rio Grande's $75 million in total book deposits. A group
of Rio Grande's IRA depositors, among them Kenneth and Norma Lee, filed a class action lawsuit
against Rio Grande and Gutierrez in the United States District Court for the Southern District of
Texas in Brownsville. The IRA depositors sought a declaration that the funds in their IRA
accounts were trust funds and therefore entitled to priority over other Rio Grande deposits. The
IRA depositors' suit also alleged that Gutierrez's decision on their claims had deprived them of
their property under color of law and was made without due process, in violation of the Federal
Civil Rights Act. See 42 U.S.C.A. § 1983 (1981).

 While the federal suit was pending, the Lees and other IRA depositors filed suit in
Travis County district court, asserting the same causes of action as in their federal suit, but not
as a class action. Rio Grande responded with both a motion to designate the class of IRA
depositors and a counterclaim for a declaratory judgment that the IRAs were general rather than
special deposits, and therefore not entitled to special priority. See Uniform Declaratory Judgment
Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-37.011 (West 1986 & Supp. 1993). In
addition, Rio Grande asserted that the claims of most of the IRA depositors were barred by the
three-month limitation period that applies to appeals of claim determinations by savings and loan
liquidators. See Tex. Rev. Civ. Stat. Ann. art. 852a, § 8.09(f) (West Supp. 1993). In response,
the state court certified the class of IRA depositors, designating the Lees as class representatives. 
See Tex. R. Civ. P. 42.

 After a bench trial, the state court ruled that: (1) the IRAs were special deposits,
entitled to priority over general deposits; (2) the IRA depositors were not entitled to interest on
their claims after the date Rio Grande was placed in conservatorship; and (3) the federal suit tolled
the three-month limitations period. The court also awarded attorney's fees to the IRA depositors.

 Rio Grande appealed to this Court, contending that the trial court erred first in
declaring the IRAs to be special deposits, and second in determining that the federal suit tolled
the three-month limitations period. Gutierrez v. Lee, 812 S.W.2d 388, 390 (Tex. App.--Austin
1991, writ denied). We reversed the trial court's decision, holding that the federal suit did not
toll the three-month limitation period. Id. at 392. Because the trial court had made no findings
as to whether the state court suit was timely for each of the class members under the terms of
section 8.09(f), we remanded the cause. We did not address whether the IRA accounts were
general or special accounts.

 On remand, the district court conducted an evidentiary hearing and concluded that
the only IRA depositors whose claims were not time-barred were those to whom Gutierrez had
sent notices on or after October 4, 1988. The district court identified thirty-three such depositors
in its findings of fact and conclusions of law, and in its final judgment. Furthermore, the district
court reversed itself on the principal substantive question of the suit, holding that the IRA
accounts were general deposits, with the same priority in the liquidation as other Rio Grande
deposits.

 In the instant appeal, the IRA depositors assail the district court's judgment, raising
three points of error. In their first point of error, the IRA depositors argue that they are entitled
to the full amounts of their IRA deposits because these funds were held in trust by Rio Grande. 
Appellants contend that as trust funds, their deposits were "special deposits" under Texas law. 
While a "general deposit" creates a debtor-creditor relationship between the financial institution
and the depositor, no debtor-creditor relationship is created with a special deposit; instead, the
bank holds a special account as a trustee or bailee. Hudnall v. Tyler Bank & Trust Co., 458
S.W.2d 183, 186 (Tex. 1970). While an agreement between the depositor and the bank is
required to create a special deposit, appellants contend that the documents signed to create their
IRA accounts demonstrate that their IRA funds were meant to be special deposits.

 Rio Grande responds that the IRA depositors are entitled to no greater priority for
their deposits than the rest of Rio Grande's depositors. Rio Grande points to the fact that the IRA
depositors received passbooks in the name of the IRA trust just like all other depositors, and
likewise were paid interest for their deposits. Further, Rio Grande contends that the IRA
disclosure statement explained that Rio Grande was to deposit IRA funds as directed by the IRA
depositor. Therefore, Rio Grande argues that because the IRA depositors directed Rio Grande
to deposit the IRA funds in interest-bearing accounts, there was no agreement that Rio Grande
hold the IRA deposits as special deposits and return the funds intact. Rio Grande asserts that if
the agreement had been to hold the funds in trust and return them intact, Rio Grande would not
have paid interest on the accounts.

 The IRA depositors also contend, in their second and third points of error, that the
trial court erred in finding all but thirty-three of the IRA depositors' claims time-barred, and that
the trial court erred in not awarding interest on the IRA deposits. Rio Grande responds by
arguing that the trial court correctly held that the IRA depositors to whom claim notices had been
mailed prior to October 4, 1988, were time-barred, and that the IRA depositors were not entitled
to interest. Rio Grande also brings a cross-point contending that the trial court erred in not
finding that IRA depositors to whom notice was mailed before November 21, 1988, were time-barred.



 DISCUSSION


 In their first point of error, the IRA depositors contend that the trial court erred in
holding that their IRA accounts were general rather than special accounts, and not entitled to
priority over other depositors in the liquidation of Rio Grande's assets. We disagree.

 The Texas Supreme Court reviewed in detail the difference between general and
special deposits in Hudnall v. Tyler Bank & Trust Co.:



When money or its equivalent is deposited in a bank without any special
agreement, the law implies that it is to be mingled with the other funds of the bank,
the relation of debtor and creditor is created between the bank and the depositor,
and the deposit is general. In such a transaction the bank becomes the owner of
the fund. When, on the other hand, money or its equivalent is so deposited with
an accompanying agreement that the identical thing deposited shall be returned, or
that the same shall be paid out for a specific purpose, the relation thus created is
not that of debtor and creditor. Such a transaction is a special deposit, and the
bank is liable only as bailee. In such a case the fund is a trust fund, the bank
acquires no title thereto, and is a mere trustee for the safe-keeping, return, or
disbursement of the fund, according to the special contract by which the deposit
is made.



Hudnall, 458 S.W.2d at 186 (quoting McBride v. American Ry. & Lighting Co., 127 S.W. 229,
232-33 (Tex. Civ. App.--Dallas 1910, no writ)).

 An individual retirement account is "a trust created or organized in the United
States for the exclusive benefit of an individual or his beneficiaries" meeting certain requirements. 
26 U.S.C.A. § 408 (West Supp. 1993). (1) IRAs permit individuals to set aside a limited amount
of income per year that is tax deductible and only subject to income tax when withdrawn from the
IRA. Id. The depositor who creates the IRA is both the settlor and the primary beneficiary of
the trust, and the funds deposited constitute the corpus of the trust. IRAs are a unique type of
trust in that the settlor/beneficiary has the sole authority to determine how the trust corpus is
invested. The trustee bank acts only as custodian of the funds, and invests them as directed by
the settlor/beneficiary. Various types of investments may be made with the funds, such as stocks,
bonds, mutual funds, and certificates of deposit or passbook savings accounts with banks and
savings and loans. These investments are held in the name of the IRA account, not in the name
of the depositor.

 The IRA depositors contend that because their IRA accounts are trust accounts, they
are therefore special deposits. The IRA depositors argue that as special deposits, their IRA funds
were never commingled with Rio Grande's other assets, and therefore a debtor-creditor
relationship never arose. Accordingly, the IRA depositors conclude they are entitled to the full
amount of their IRA accounts, and should be given priority over the claims of other Rio Grande
depositors in the liquidation.

 The IRA depositors' argument is premised on a confusion between the IRA
account, and the assets held within the IRA account. It is the IRA account that is held in trust,
not the assets contained in the IRA account. The difference is readily apparent if the IRA account
is thought of as a safe deposit box and the IRA account's assets as the contents of the safe deposit
box. If a person leases a safe deposit box at a bank and places $1000 in cash in the safe deposit
box, the bank has the responsibility to insure that the safe deposit box is secure in order to protect
its contents. However, the person who rents the safe deposit box decides what to store in the safe
deposit box, and cannot blame the bank if the value of the money or other item stored in the safe
deposit box declines.

 The relationship between the bank and the IRA account is similar to the bank's
relationship with a safe deposit box. The financial institution administers the IRA accounts,
keeping records of all deposits and withdrawals, but the IRA depositor--or more accurately the IRA
settlor--determines what assets the IRA account contains, or under the safe deposit box analogy,
what is placed in the safe deposit box. Just as a bank is not responsible for the investment wisdom
of storing cash in a safe deposit box, the financial institution administering the IRA account is not
responsible if the IRA settlor's investment decision was unwise.

 In the present case, some confusion arises because Rio Grande acted in a dual role
as IRA custodian and investment institution for the IRA funds. As opposed to stocks, bonds, or
mutual funds, the IRA depositors at Rio Grande were only given a choice between investing their
IRA funds in Rio Grande certificates of deposit or Rio Grande passbook savings accounts. 
However, the fact that the certificates of deposit and passbook savings accounts were assets held
by the IRA trusts did not alter the character of the investment, any more than stocks held in an
IRA account differ from stocks held by an individual. If the issuing corporation were to go
bankrupt, shareholders who held their stocks (2) in their IRA accounts would have no greater claim
to corporate assets than would other shareholders. The legal presumption is that money deposited
with a bank in an interest-bearing instrument is to be commingled with other funds at the bank,
creating a debtor-creditor relationship between the bank and the depositor, in the absence of an
agreement to the contrary. Hudnall, 458 S.W.2d at 186. 

 The IRA depositors, however, contend that language in the trust documents barred
Rio Grande from commingling their IRA funds with funds from other Rio Grande deposits. (3) We
view this language simply as prohibiting Rio Grande from commingling separate IRA trusts. 
Further, the IRA trust documents do not reflect an agreement not to commingle the funds of the
IRA trusts. The disclosure statement, signed by all Rio Grande customers when the IRA account
was opened, reads as follows:



The funds in this trust will be invested in savings deposits chosen by you from
among the classes of deposits offered for the investment of IRA funds. The trustee
has discretion to determine what types of deposits will be included in such classes. 
However, if permitted by law and by the terms of the IRA trust agreement, the
trustee may invest part or all of the funds in other investments as directed by you. 
You are solely responsible for directing investment of the funds accumulated in the
IRA trust savings deposits or other authorized investments, and the trustee will
carry out its responsibilities in this regard only in response to your specific
instructions.

The disclosure statement indicates that Rio Grande did not accept the IRA funds "with an
accompanying agreement that the identical thing deposited shall be returned." Hudnall, 458
S.W.2d at 186. The IRA depositors gave Rio Grande no such "specific instructions." On the
contrary, the decision to invest the IRA funds in Rio Grande certificates of deposits or passbook
savings accounts, which paid a high rate of interest--accompanied by greater risk--was entirely the
decision of the IRA depositors. The IRA depositors are entitled to exactly what they placed in
their "safe deposit boxes": their savings account passbooks and their certificates of deposit. It
is unfortunate, but not the responsibility of the bank as custodian of the IRA, that the IRA
depositors' investments declined in value.

 The IRA depositors respond that these were not real "investments." They contend
that they were not able to choose their investments because Rio Grande forced them to choose
between only two options: Rio Grande certificates of deposits and Rio Grande passbook savings
accounts. This argument, however, simply misconceives the point at which the IRA depositors
made their investment decision. By choosing Rio Grande to be the custodian of their IRA
accounts, the depositors chose to invest their IRA funds in Rio Grande Savings and Loan, rather
than in some other permissible IRA investment.

 The IRA depositors also cite several federal cases and cases from other states,
contending that they stand for the proposition that IRA accounts are special deposits. None of the
cases cited are on point. They stand for the proposition that a financial institution may not use
IRA deposits to offset against the individual debts of an insolvent IRA depositor. Most of these
cases are based on the fact that the financial institution is indebted to the IRA trust and not to the
IRA depositor, and therefore, the financial institution is not permitted to use trust funds to pay the
individual obligations of the IRA depositor. See In re McDaniel, 41 B.R. 132, 133 (Bankr. N.D.
Tex. 1984); In re Todd, 37 B.R. 836, 837-38 (Bankr. N.D. La. 1984); In re Dunn, 5 B.R. 156,
158 (Bankr. N.D. Tex. 1980). The other cases cited by the IRA depositors are also
distinguishable as offset cases. (4)

 Further, regulations promulgated by the Federal Deposit Insurance Corporation
guide us in reaching the conclusion that IRA accounts should be treated as general deposits under
Texas law. FDIC regulations provide that an IRA account is entitled to $100,000 of deposit
account insurance beyond the insurance provided for the depositor's other accounts. 12 C.F.R.
§ 330.13 (1993). This regulation indicates that IRA funds are intended to be subject to the same
risk of loss as other deposits. Accordingly, we conclude that IRA accounts are general deposits
under Texas law and not entitled to priority over Rio Grande's other depositors. The IRA
depositors' first point of error is overruled.

 In their second point of error, the IRA depositors contend that the trial court erred
in holding that some IRA customers' claims of priority were time-barred, and in their third point
of error argue that they are entitled to interest on their claims. Because we have held that none
of the IRA depositors are entitled to priority over other Rio Grande depositors, we need not
address these points. We likewise need not address the cross-point raised by Rio Grande,
contending that the trial court erred in not finding all of the IRA depositors' claims time-barred
who received claim notices before November 21, 1988.


CONCLUSION


 Finding no error, the judgment of the trial court is affirmed.



 

 Mack Kidd, Justice

Before Justices Powers, Jones, and Kidd

Affirmed

Filed: January 12, 1994

Publish
1. [1]  Section 408 limits the amount of the annual contribution, the persons or organizations
that may be trustees, permissible investments, the time when distributions may be made, and
to whom distributions are made in case of the death of the primary beneficiary. 26 U.S.C.A.
408(a) (West Supp. 1993).
2. [2]  More accurately, the IRA trustee would own a legal interest in the stocks, while the
settlor/depositor would retain equitable ownership of the stocks.
3. [3]  The IRA depositors point to the following language under Article III of the "Individual
Retirement Custodial Account" agreement: "No part of the custodial funds may be invested in
life insurance contracts, nor may the assets of the custodial account be commingled with other
property except in a common trust fund or common investment fund (within the meaning of
section 408(a)(5) of the Code)."
4. [4]  Masi v. Ford City Bank & Trust Co., 779 F.2d 397 (7th Cir. 1985); In re Mastroeni, 57
B.R. 191 (Bankr. S.D.N.Y. 1986); First Interstate Bank v. Big Horn Federal Savings & Loan,
770 P.2d 231 (Wy. 1989); First Nat'l Bank of Blue Island v. Estate of Philip, 436 N.E.2d 15
(Ill. App. 1982).