E. C. PALMER & CO., Limited, v. FIRST NAT.
BANK OF EL PASO. (No. 2091.)

Court of Civil Appeals of Texas. El Paso.
Feb. 2, 1928.

1. Trial ⊚⟿139(1), 140(1)—Credibility of wit-
nesses and weight of their testimony are ex-
clusively for jury.

Jury are exclusive judges of credibility of
witnesses and weight to be given to their tes-
timony.

2. Appeal and error ⊚⟿1001(1)—Generally,
verdict supported by evidence should not be
disturbed on appeal.

Generally, where verdict is supported by
evidence, verdict should not be disturbed on ap-
peal.

3. Trial ⊚⟿219—Court may submit definitions
necessary to enable jury to render verdict
(Rev. St. 1925, art. 2189).

Under Rev. St. 1925, art. 2189, court is em-
powered to submit definitions which in its
judgment are necessary to enable jury to prop-
erly pass on and render verdict on such issues.

4. Appeal and error ⊚⟿1064(1)—Submission of
definition, to be ground for reversal, requires
definition to be incorrect or prejudicial to one
party (Rev. St. 1925, art. 2189).

Definition submitted by court as authorized
by Rev. St. 1925, art. 2189, must be either in-
correct or prejudicial to rights of one party be-
fore appellate court can reverse judgment be-
cause of submission of such definition.

5. Appeal and error ⊚⟿1064(1)—Submission of
definition is not prejudicial error merely be-
cause other definitions should also have been
submitted.

Submission of definition objected to is not
prejudicial error because other definitions should
also have been submitted, appellant being in
position to request other definitions.

6. Appeal and error ⊚⟿1064(1)—Trial ⊚⟿194
(11)—Defining word "agreement" in submis-
sion held not prejudicial to plaintiff suing for
breach of agreement or comment on weight of
evidence (Rev. St. 1925, art. 2189).

In suit for loss sustained by creditor by rea-
son of defendant bank's breach of agreement
not to exercise its right of offset as to debtor's
deposits in event of debtor's bankruptcy, receiv-
ership, or assignment for benefit of creditors,
giving of correct definition of word "agreement"
in connection with issue submitted was not
prejudicial to rights of plaintiff nor was it com-
ment on weight of evidence, but was proper ex-
ercise by court of power to submit definitions,
granted by Rev. St. 1925, art. 2189.

7. Assignments ⊚⟿49—Giving of check does not
operate as assignment of funds of drawer
with bank (Rev. St. 1925, art. 5947, § 189).

Mere giving of check does not operate as
assignment of any part of funds of drawer with
bank, under Rev. St. 1925, art. 5947, § 189.

8. Assignments ⊚⟿49—Check may constitute
assignment of funds of drawer with bank if
made so by agreement or understanding of
parties.

Parties to check may, by agreement or un-
derstanding, oral or otherwise, create assign-
ment of funds of drawer with bank by giving of
check.

9. Assignments ⊚⟿49—To constitute assign-
ment of drawer's funds, check must have been
intended by parties to have such effect.

In order that check shall constitute assign-
ment of funds of drawer with bank, parties
must have intended that check should have that
effect.

10. Trial ⊚⟿350(4)—In suit for bank's breach
of agreement not to exercise right of offset
respecting debtor's deposit, issue whether
debtor's check to plaintiff was intended as
assignment held for jury.

In action by creditor for loss sustained by
defendant bank's breach of agreement not to
exercise its right of offset as to debtor's de-
posit on debtor's bankruptcy, receivership, or
assignment for benefit of creditors, issue as to
intention of parties to regard check, drawn by
debtor on defendant bank and payable to plain-
tiff as an equitable assignment of funds de-
posited by debtor in defendant bank should have
been submitted to jury, and its exclusion was
error.

11. Appeal and error ⊚⟿1056(1)—Assignments
⊚⟿136—Exclusion of evidence of debtor's in-
tention to assign funds in defendant bank by
drawing check to creditor held reversible er-
ror.

In action by creditor for loss sustained by
defendant bank's breach of agreement not to
exercise right of offset as to debtor's deposit on
debtor's bankruptcy, receivership, or assign-
ment for benefit of creditors, evidence of debt-
or's intention that check to plaintiff should con-
stitute assignment pro tanto of funds in defend-
ant bank was competent and its exclusion was
reversible error.

12. Trial ⊚⟿350(1)—Requested issue whether
check constituted equitable assignment of de-
posit held improper as involving both law and
fact.

In action by plaintiff for loss sustained by
defendant bank's breach of agreement not to ex-
ercise right of offset as to debtor's deposit on
debtor's bankruptcy, receivership, or assignment
for benefit of creditors, requested issue as to
whether debtor's check payable to creditor con-
stituted equitable assignment pro tanto of funds
on deposit with bank was improper as involv-
ing question of both law and fact.

Appeal from District Court, El Paso Coun-
ty; P. R. Price, Judge.

Suit by E. C. Palmer & Co., Limited, against
the First National Bank of El Paso. Judg-
ment for defendant, and plaintiff appeals.
Reversed and remanded.

R. A. D. Morton and John M. Worrell, both
of El Paso, for appellant.

⊚⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Turney, Burgess, Culwell, Holliday & Pollard, of El Paso, for appellee.

PELPHREY, C. J. This suit was filed by appellant against appellee in the Forty-First district court of El Paso county, Tex., alleging: That prior to October, 1924, plaintiff had a stock of certain merchandise in which it dealt on consignment with Western Paper & Woodenware Company, a corporation, doing business in El Paso, Tex., under an agreement whereby the paper company made sales from the consigned stock, and on or about the 10th day of each month would submit to plaintiff a statement of the sales made for the calendar month preceding, and would then send to plaintiff by mail a check drawn by the paper company on defendant bank for the amount of such month's sales. That in October, 1924, the affairs of the paper company became involved and that a plan was worked out by the paper company officers, the representatives of several creditors, and J. E. Benton, vice president of defendant bank, who was acting for the bank, whereby it was agreed that the paper company should continue making deposits in defendant bank and therefrom each month's expenses should be paid, and also full payment should be made of all sales made by the paper company from consigned merchandise, and that the balance, if any, should be prorated among its then existing general creditors, and that the defendant bank should be paid $500 per month until January 1, 1925, to apply on the indebtedness of the paper company to it, such indebtedness then amounting to approximately $26,000, and that defendant bank would not in the event of bankruptcy or receivership or assignment, before then existing creditors had been paid in full, exercise its right of offset as to said deposits, but would hold same for the benefit of said creditors. That a circular letter to all creditors setting out said plan was sent out with the approval and knowledge of said bank, and that said plan was acted on by all concerned for several months and until February, 1925. That plaintiff received check of the paper company for sales from the consigned stock for the months of October, November, and December, 1924, and that on February 16, 1925, the paper company sent its check for $2,291.08, drawn on defendant bank to plaintiff, to cover January sales from the consigned stock. That by reason of the course of dealing and the agreement aforesaid, the said check was intended to and did constitute an equitable assignment by the paper company of so much of its deposits in defendant bank as was necessary to pay the amount of said check, it being further alleged that on the date of said check and until on or about February 25, 1925, the deposit account of the paper company with the bank was in excess of $11,000. That plaintiff in due course presented said check to the bank for payment, but the bank wrongfully refused to pay same because the bank had, contrary to its agreement, appropriated and applied the deposits of the paper company, amounting to over $11,000, to the notes which it held against the paper company.

It was further alleged by plaintiff: That on or about February 26, 1925, the paper company made a general assignment to J. E. Hodges for the benefit of its creditors, and that plaintiff filed claim with said assignee for sums aggregating $6,556.73, and that it received under the assignment 70 per cent. of its said claim, leaving a balance unpaid thereon of $1,967.64. That said claim was filed by plaintiff without prejudice to and reserved all its rights against defendant bank. That if defendant bank had not wrongfully appropriated said deposits, plaintiff's loss in the matter would have been only about $400, and that by reason of its wrongful acts in the premises caused loss to the plaintiff of $1,517.64.

It was further alleged by way of trial amendment that in any event the bank made the agreement with the paper company, acting through its attorney, A. H. Goldstein, for the use and benefit of all creditors, to the effect that the bank would not, in the event of the liquidation of the paper company, exercise its right of offset, but would hold the deposits for the benefit of the creditors generally, and plaintiff prayed for recovery of its debt, damages, interest, costs, and general relief.

The bank answered by way of general denial and specially pleaded a denial of the agreement alleged relative to the deposits, and also pleaded, under oath, want of consideration for such agreement, if any was made.

The case was submitted to a jury on a single special issue:

"Issue No. 1. Do you find from a preponderance of the evidence that on or before the 11th day of October, 1924, it was agreed, in substance, by and between the Western Paper & Woodenware Company, acting through A. H. Goldstein, and the defendant, First National Bank of El Paso, acting by and through its Vice President, J. E. Benton, that in the event said company continued to deposit its funds in said defendant bank, in the event of the liquidation of the said company by bankruptcy, through assignment or otherwise, that the funds on deposit in said bank at such time should be held to be distributed among the creditors of said company and the said bank would waive its right of offset as to its indebtedness against the said company? Answer yes or no."

The jury having answered "No" to said issue, the court rendered judgment that plaintiff take nothing, and from that judgment plaintiff has appealed.

Appellant asks for a reversal of the case upon nine propositions: (1) That the evidence is insufficient to sustain the answer of the jury to the issue submitted; (2) that the court erred in not setting aside said answer, as being contrary to the overwhelming pre-

ponderance of the evidence to such a degree as to result in a manifest injustice if allowed to stand; (3) that the court erred in defining an agreement in connection with the issue submitted; (4) that the court erred in not granting appellant's motion for a judgment on the theory that the check from the paper company to it constituted an equitable assignment and the deposits with the bank special deposits; (5) that the court erred in refusing to give to the jury the requested issue as to whether the check in question constituted an equitable assignment; (6) that, if the issue as requested by appellant should not have been submitted, then the court erred in failing to submit the issue in some form; (7) that the court erred in excluding the testimony of James Neeson as to the intention of the paper company in delivering the check in question; (8) that the court erred in refusing to render judgment for appellant on the theory that the bank, under the facts of the case, was estopped from offsetting the deposits; and (9) that the court erred in excluding the testimony of Charles E. Sprott, as to what he had been told by A. H. Goldstein, attorney for the paper company, relative to the bank's agreement as to the deposits.

We cannot agree with appellant's contention that the evidence is insufficient to sustain the answer of the jury to the issue submitted.

It is admitted by appellant that there is evidence to support the finding, but the claim is that it is against the preponderance of the evidence to that degree which shows that manifest injustice has been done.

Appellant introduced evidence that an agreement such as was submitted in the special issue had been made between Goldstein and Benton, but Mr. Benton emphatically denies ever having made such an agreement.

[1, 2] The jury are the exclusive judges of the credibility of witnesses and the weight to be given to their testimony, and the general rule is that, where a verdict is supported by evidence, such verdict should not be disturbed on appeal.

Appellant has cited several cases in support of this proposition, but we do not believe the case at bar is such a case as would justify us in departing from the well established general rule. Appellant's assignment as to the sufficiency of the evidence to support the answer of the jury is therefore overruled.

Appellant further complains of the action of the court in defining "agreement" in connection with the issue submitted and contends that said definition laid undue stress on the elements of an agreement; that the jury needed no definition of the term; and that the definition was a comment on the weight of the evidence.

The clause objected to reads as follows:

"In connection with this issue, you are charged that the essence of an agreement is the meeting of the minds of the parties thereto as to the terms comprehended therein; that is, the mutual expression of assent by the parties thereto to the terms thereof."

Article 2189, R. S. 1925, reads:

"In all jury cases the court may submit said cause upon special issues without request of either party, and, upon request of either party, shall submit the cause upon special issues raised by the pleadings and the evidence in the case. Such special issues shall be submitted distinctly and separately. * * * In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues. If the nature of the suit is such that it cannot be determined on the submission of special issues, the court may refuse the request to do so, but the action of the court in refusing may be reviewed on proper exception in the appellate court, and this article shall be construed in connection with the succeeding article."

[3] There is no objection made by appellant as to the correctness of the definition, and, under the statute above cited, it seems that the court is given the power to submit definitions which in its judgment are necessary to enable the jury to properly pass upon and render a verdict on such issues.

[4] That being true, a definition submitted by the court would necessarily need to be either incorrect or prejudicial to the rights of one of the parties before an appellate court would be entitled to reverse the judgment rendered because of the submission of such definition.

Appellant contends that there were other terms used in the issue submitted which were more in need of explanation than the one defined, and that there was no necessity for the definition given.

[5] If it be true that other definitions should have been given, then appellant was in a position to request them, and the mere fact that others should have been submitted does not render the submission of the one in question prejudicial.

[6] Nor can we see, under the facts of the present case, how the submission of the definition of an "agreement" could have prejudiced the rights of appellant or how it can be considered as a comment upon the weight of the evidence. We are of the opinion that the court was exercising the power granted it by the statute, in submitting such definition, and that its action in so doing presents no error.

Appellant filed a motion for judgment and prayed that the court enter judgment in its favor for the damages alleged in its amended petition, on the ground that the issue submitted presented only one of the theories upon which it was entitled to a judgment; that the giving of the check by the Western Paper & Woodenware Company to E. C. Palmer & Co., Limited, under the circumstances as revealed by the evidence, constituted an equitable as-

signment pro tanto of the funds on deposit with the appellee; and that, the issue as to whether or not such check constituted an assignment not having been submitted to the jury, it was reserved for action by the court. The refusal of the court to grant this motion is complained of by appellant.

[7] That the mere giving of a check does not operate as an assignment of any part of the funds of the drawer with the bank, there can be no question. Article 5947, R. S. 1925, § 189.

[8] Yet it is entirely competent for the parties to create such an assignment by their agreement or understanding, oral or otherwise, in addition to the check that such shall be the effect of the transaction. Hatley v. West Texas Nat. Bank (Tex. Com. App. Sec. B) 284 S. W. 540; First Nat. Bank v. Texas Moline Plow Co. (Tex. Civ. App.) 168 S. W. 420.

[9] One of the essentials necessary to constitute such an assignment is the intention of the parties that the check shall have that effect. First Nat. Bank v. Texas Moline Plow Co., supra; House v. Kountze, 17 Tex. Civ. App. 402, 43 S. W. 561 (writ refused); McBride v. American Ry. & Lighting Co., 60 Tex. Civ. App. 226, 127 S. W. 229; Odle v. Barnes et al., 299 S. W. 635 (Tex. Com. App. Sec. B).

The Austin Court of Civil Appeals in the case of Central Bank & Trust Co. v. Davis, 149 S. W. 290, used the following language relative to the assignment of bank deposits:

"There can be no question but what a deposit in a bank is the proper subject of assignment, and that the assignee of the same, in whole or in part, may maintain an action therefor in his own name. What will amount to such an assignment will depend upon the facts of the particular case."

A writ of error was denied by the Supreme Court in this case.

Appellant not only moved for a judgment in this case on the theory that the check under the circumstances constituted an equitable assignment, but he requested that an issue as to whether the check constituted an equitable assignment be submitted to the jury as well as assigning error to the court's action in excluding testimony of the witness Neeson as to the intention of the paper company in giving the check.

[10-12] While we cannot agree with appellant's contention that the court should have rendered judgment in its favor on the theory that the check constituted an equitable assignment, yet we are of the opinion that the question as to the intention of the parties when the check was given should have been submitted to the jury for determination, and we also think the evidence of Neeson as to the intention of the paper company was competent evidence on that question. The issue

requested by appellant was, we think, one of both law and fact, and was not the proper one to have been submitted; but, as said above, the question as to whether or not the check was intended as an assignment pro tanto of the funds was certainly material, and an issue properly covering that question should have been submitted.

The court's failure and refusal to submit such an issue and the exclusion of the testimony of the witness Neeson as to the intention of the paper company, we think, necessitates a reversal of the case.

The judgment of the trial court is therefore reversed and the cause remanded.

The other assignments have been considered and are overruled.

Reversed and remanded.