IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION

FILED

September 9, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| RANDALL E. DESKINS, et ux. | ) | SEVIER COUNTY |
| | ) | 03A01-9701-CV-00023 |
| Plaintiffs-Appellants | ) | |
| | ) | |
| | ) | |
| v. | ) | HON. REX HENRY OGLE, |
| | ) | JUDGE |
| | ) | |
| BEULAH M. WILLIAMS | ) | AFFIRMED IN PART; REMITTITUR |
| | ) | SUGGESTED IN PART; and |
| Defendant-Appellee | ) | REMANDED |

ROBERT L. OGLE, JR., OF SEVIERVILLE FOR APPELLANTS

JAMES Y. (BO) REED OF KNOXVILLE and DWIGHT E. STOKES OF
SEVIERVILLE FOR APPELLEE

O P I N I O N

Goddard, P.J.

Randall E. Deskins and his wife Thelma Jean Deskins,
appeal a judgment of the Circuit Court for Sevier County, entered
pursuant to a jury verdict, which dismissed their claim against
Beulah M. Williams for personal injuries suffered by Mr. Deskins
and loss of consortium and services by Mrs. Deskins, resulting
from an automobile accident occurring on June 3, 1989. Mr.

Deskins also appeals a judgment in favor of the original Defendant and Counter-Plaintiff, Beulah M. Williams.

The jury found Mr. Deskins to be 100 percent at fault in the accident and that Ms. Williams had suffered damages in the amount of $20,000 as a result of the injuries she received.

The Deskinses appeal raising the following issues:

I.    WHETHER THE TRIAL COURT ERRED IN ITS RULINGS RELATIVE TO THE FORTY-FIVE (45) MPH SPEED SIGN BEING PROPERLY ERECTED AFTER THE APPELLANTS RAISED THE QUESTION OF THE AUTHENTICITY AND NON-COMPLIANCE OF T.C.A §55-8-152, ET SEQ.

II.    WHETHER THE TRIAL COURT ERRED IN NOT EXCLUDING THE TESTIMONY OF THE STATE TROOPERS RELATIVE TO THE SPEED OF APPELLANTS' VEHICLE.

III.    WHETHER THERE IS NO MATERIAL EVIDENCE TO SUPPORT THE VERDICT IN THAT THE PHYSICAL FACTS CAN NOT BE RECONCILED WITH THE DIRECT TESTIMONY OF THE APPELLEE AND HER WITNESSES.

IV.    WHETHER THE VERDICT OF THE JURY FINDING THAT THE APPELLANT, DESKINS, WAS GUILTY OF ONE HUNDRED (100%) PERCENT NEGLIGENCE THAT CAUSED THE ACCIDENT AND NOT FINDING THE APPELLEE COMPARATIVELY NEGLIGENT IN ANY AMOUNT INDICATES PREJUDICE AGAINST THE APPELLANTS AND UNACCOUNTABLE CAPRICE ON THE PART OF THE JURY. APPELLEE SHOULD HAVE BEEN GUILTY OF NEGLIGENCE AS A MATTER OF LAW.

V.    WHETHER THERE WAS MATERIAL EVIDENCE TO SUPPORT THE EXORBITANT JUDGMENT RENDERED BY THE JURY, IN FAVOR OF APPELLEE, IN THE AMOUNT OF TWENTY THOUSAND ($20,000.00) DOLLARS.

The accident giving rise to this appeal occurred, as already noted, on June 3, 1989, about 9:00 a.m. The sun was

shining, the road was dry, and the weather played no factor in its causation.

Ms. Williams was driving a vehicle in a northerly direction on Jones Cove Road, also known as State Route 339. Jones Cove Road intersects in a T intersection with Old Newport Highway, also known as old U.S. Route 411, at the scene of this accident. Mr. Deskins, driving a 1987 Mercedes automobile, was proceeding in an easterly direction on Old Newport Highway and, after cresting a hill some 100 yards from the intersection, was unable to stop before the front of his vehicle collided with the left front of Ms. Williams' vehicle, which was proceeding north on Jones Cove Road and had pulled into the intersection intending to turn left, or west, on Old Newport Highway.

Mr. Deskins's vehicle left skid marks of 130 feet prior to striking Ms. Williams' vehicle.

According to Ms. Williams, she stopped at the stop sign facing her on Jones Cove Road, drove up to a white line some few feet north of the stop sign, stopped again, then proceeded into the intersection after looking both ways and observing no traffic. She testified that after the impact her vehicle was knocked backward and, upon traveling in half-circle course, ultimately came to rest against the outside wall of Howard's Grocery, which was located in the southwest quadrant of the intersection. (See Appendix.)

3

A disinterested witness testified that Ms. Williams, upon observing Mr. Deskins bearing down upon her, stopped, put the vehicle in reverse, and, after impact, backed it against the Howard Grocery Store Building.

The proof was also in sharp dispute as to whether the car was in drive at the time it hit the building, as Ms. Williams testified, or was in reverse, as testified by the disinterested witness, who also testified that after the accident he placed the gear in park and removed the keys.

Although much of the testimony, as above noted, is in dispute, the evidence is almost unanimous that at the time Ms. Williams started pulling into the intersection, Mr. Deskins vehicle was not in sight.

Apropos of the first issue, the Deskinses contend the Trial Court was in error in charging the jury that the area in question was subject to a 45-mile speed limit and that if Mr. Deskins was traveling in excess of 45 miles per hour he was guilty of negligence per se. They base their contention on the proof developed in their motion in limine which showed that insofar as the records were available no action was taken by the proper county or state officials to reduce the general state-wide speed limit which, at the time of the accident, was 55 miles per hour.

4

Both parties cite the case of <u>Thomas v. Harper</u>, 53 Tenn. App. 549, 564, 385 S.W.2d 130, 138 (1964), which, as pertinent to this appeal stated the following:

> T.C.A. § 59-853 [now 55-8-153], among other things authorizes the legislative authority of towns and cities to prescribe speed limits within certain areas or zones or on designated highways, avenues, streets in their respective jurisdictions, and to erect appropriate signs and traffic signals. Where the proof is there was a speed sign, and no question made with respect to its regularity, the presumption of regularity and compliance with law which appertains until the contrary is shown would make the fact of its presence admissible.

A later case, authored by Judge Franks, <u>Johnson v. Calfee</u>, an unreported opinion of this Court, filed in Knoxville on April 21, 1988, also involved a T-intersection and the applicability of a speed zone sign. The proof in that case showed that a sign was erected some mile or mile and a half from the scene of the accident, but the Highway Patrolman who investigated the accident could not testify that it was validly posted or whether it applied to the section of the road where the accident occurred. Additionally, there was testimony from the Bradley County Clerk, who had held this position for 25 years, that he searched the minutes of the legislative enactments of Bradley County and found no legislative enactment authorizing the reduction of the speed limit.

Under these circumstances we held the Trial Court had not sufficiently charged the jury regarding the disputed question of speed limit, and in doing so stated the following:

> Where the violation of the statutory rules of the road is at issue and there is evidence from which the jury could find a violation of one or more statutory rules the submission of each of the standards should be made with a clear and concise explanation. Moreover, it is well-settled that a party is entitled to have his theory of the case and the applicable law submitted to the jury. McClard v. Reid, 190 Tenn. 337, 229 S.W.2d 505 (1950).

> Where there is evidence of a posted speed limit and no question is made as to its regularity or validity there is a presumption that the posted speed is in compliance with the law. Thomas v. Harper, 55 Tenn.App. 594, 385 S.W.2d 130 (1964). However, if the posted speed sign was placed without statutory authority, the failure of a motorist to heed its restrictions could be negligence but he should not be penalized with the consequences of the rule of negligence per se of violating a statute, see Woodfin, et al. v. Insel, et al., 13 Tenn.App. 493 (1931), since a statutorily established speed limit prevails over speed signs erected without statutory authority. Horne v. Palmer, 38 Tenn.App. 354, 274 S.W.2d 372 (1954).

> The speed of plaintiff's vehicle as it related to the lawful speed limit was crucial to the determination by the trier of fact as to whether plaintiff was negligent. Accordingly, the trial court should have instructed the jury on the statutes pertaining to establishing speed limits and the plaintiff's duties thereunder, leaving to the jury the determination of the lawful speed where the accident occurred as determined from the law as given by the court and the evidence offered by the parties.

In the case at bar the only proof as to official action taken to reduce the speed limit was that of state and county officials who say that, insofar as their records are available, no formal action had been taken to reduce the speed limit as to

6

this area. However, the proof is undisputed that a 45-mile speed zone sign had been in place since at least 1974, and had been maintained and replaced from time to time by state officials. Given this proof and the further fact that the speed limit sign was a "standard" one, we conclude that the presumption mandated in Thomas has not been overcome and that the Trial Judge was not in error in his charge to the jury.

With regard to the second issue, only three witnesses testified as to the speed of Mr. Deskins' vehicle in miles per hour, although Ms. Williams' mother, who was sitting on the passenger side of the front seat, did state that when the Deskins car came over the hill it "looked like it was airborne." Two of the three witnesses whose testimony are assailed are State Troopers who testified that upon conducting what is known as a drag test the next day after the accident, they concluded the speed of Mr. Deskins' vehicle exceeded 45 miles per hour. The device that was used to conduct the test is a portion of a car tire (approximately one-fourth), which was attached to a set of scales and pulled along the pavement at the scene of the accident. By the use of this device they were able to calculate the coeffecient of friction between the road and the tire. Upon correlating the coeffecient of friction, the length of the skid marks and a formula devised by the Traffic Institute of Northwestern University, they were able to arrive at the speed of the vehicle.

7

One of the objections to their testimony is that they were not sufficiently trained to conduct such a test. In this regard, one of the troopers had a 10-week basic training course, consisting of two weeks of accident investigation school. Additionally, he had attended a two-week school on advanced accident investigation. He had investigated over 100 automobile accidents and had been trained in the use of the drag test to determine speed.

The other trooper had been a member of the Highway Patrol for 18 and one-half years. He had attended the Northwestern Institute University of North Florida. He had a basic training for three weeks and advanced training for an additional three weeks and, still further, reconstruction studies for an additional two weeks. He had investigated over 200 accidents and had been trained in the use of the drag test.

The third witness was a senior vehicle accident reconstructionist. Although he did not conduct the tests, he used the results thereof to form an opinion as to the speed of the Deskins vehicle.

Given the wide discretion accorded a trial judge in admitting or rejecting expert testimony, Otis v. Cambridge Mutual Fire Ins. Co., 850 S.W.2d 439 (Tenn. 1992); Buchanan v. Harris, 902 S.W.2d 941 (Tenn. App. 1995), we conclude he did not abuse his

discretion in admitting testimony of the three experts assailed by issue two.

In reaching our decision we are not unmindful that the test employed was the least accurate of those that might be used (a vehicle of the same model or a rubber tired sled), or that in their initial testimony the witnesses were not deducting the 10-foot wheel base of Mr. Deskins' vehicle from the length of skid marks. However, all three witnesses were subject to rigorous cross-examination which pointed out to the jury the deficiencies of their testimony and the test employed. Finally, we observe that the Deskins vehicle only stopped after crashing into the Williams vehicle, and undoubtedly the skid marks would have been longer had the collision not occurred.

As to issues three and four, we find there is substantial material evidence that Ms. Williams stopped at the stop sign, proceeded further, stopped again, and that the Deskins' vehicle was not in sight when she entered the intersection. Whether her actions in attempting to extricate herself from an emergency situation constituted negligence was an issue for the jury, which resolved the question in her favor.

As to the final issue, the proof shows that Ms. Williams incurred medical expenses of $1135.75. She received only minor injuries which she, as the only witness testifying with regard thereto, detailed as follows:

9

Q. All right. Now, after the impact what happened with your vehicle? After the impact with Mr. Deskins' vehicle, what happened to your vehicle?

A. It went backwards into the store.

Q. Did you have an impact with the store?

A. Yes.

Q. Okay, physically what happened to you at the time of the initial impact with Mr. Deskins' vehicle?

A. I hit my head and everything was just sort of blurry since then.

Q. What sensations did you have after the impact with Mr. Deskins' vehicle, in the immediate?

A. That I was spinning. The car was spinning.

Q. Were you aware of when your car finally came to rest or hit the store itself?

A. Yeah, my mother spoke to me.

Q. What did you do then after the impact against the store?

A. I tried to put the car in gear and it wouldn't go, it was still in drive. And I turned the motor off and the key wouldn't come out and we got out of the car.

Q. Okay. What did you do then?

A. We went into the store for a few minutes, come back out and went to the hospital.

Q. Did an ambulance come?

A. Yes.

Q. And did you -- did the same ambulance take you and Mr. Deskins?

A. Yes.

Q. And was there anything said between you and Mr. Deskins at that time?

A. Yes. I was crying and he told me, don't worry about it, it would be all right.

Q.     Was there anything else that was said?

A.     No.

Q.     And were you both somewhat shaken up at that time?

A.     Yes.

Q.     And what happened with you at the hospital?

A.     They run a CAT scan and x-rays and let me go.

Q.     And what was your condition -- what all were hurt with you?

A.     Just the bang on the head and a few cuts and scrapes.

Q.     Where did you have your cuts and scrapes?

A.     I had some on my left shoulder.

Q.     And as far as your head was concerned, over the next couple of days, what happened with you? Was there any bruises that developed or any markings?

A.     Well, my eyes turned black and swelled up around them

Q.     Okay did you go back to the doctor?

A.     Yes.

Q.     And who did you go see then?

A.     I went back to the emergency room

Q.     And what was done at that time?

A.     They x-rayed it again and said it was probably caused by my glasses pressing into my face.

Q.     Okay. Ms. Williams, basically after that did you get okay?

A.     Yes.

Q.     Are you bearing any repercussions today from the accident at all?

A.     No.

11

Q.      Within a period of just days or weeks after the accident had you recovered from the accident?

A.      Yes.

Q.      After that second time when you went back to the hospital to check about being black around your eyes and all, and they're taking those x-rays, did you have to seek any other medical attention?

A.      No.


Under T.C.A. 20-10-103(a), this Court has authority to grant a remittitur if it finds an award to be "beyond the range of reasonableness." Smith v. Shelton, 569 S.W.2d 421 (Tenn. 1978). While recognizing such a determination is for the most part subjective, we nevertheless conclude under the facts of this case the award of $20,000 was beyond the range of reasonableness and a remittitur of $10,000 is suggested. Ms. Williams will have 30 days after remand to the Circuit Court within which to accept the remittitur. If she does not, a new trial will be granted on the question of damages.


For the foregoing reasons the judgment of the Trial Court as to the original complaint is affirmed, and as to the cross-complaint a remittitur is suggested. The cause is remanded to the Circuit Court for Sevier County for further proceedings not inconsistent with this opinion and collection of the remitted judgment, if accepted, and of costs below. Costs of appeal are adjudged one-half against the Deskinses and one-half against Ms. Williams.

12

_____
Houston M Goddard, P.J.

CONCUR:


_____
Charles D. Susano, Jr., J.


_____
William H. Inman, Sr.J.